law with respect to originals of a private nature to be as is contended by the other side, yet sworn copies of books of a public nature, though not records, were admissible evidence. *Lynche* v. *Clerke*, 3 *Salk.* 154.   See also *Smartle* v. *Williams*, 1 *Salk.* 280.

The words in the act of 1719 are general, and those which apply to prior surveys are tantamount to making the files of them records, or at least puts them on a footing with papers of a public nature not removable by subpœna.

PER CUR.   After consultation with the Chief Justice Sharp's Book of Surveys has always been held admissible evidence.

The plaintiff having the book produced it, so that the question whether sworn copies from it were legal testimony was not decided.

5th.  The plaintiff then offered to read out of this book a survey of one Collins, which had been recorded, calling for corners and courses of Royden's survey, contending this was good evidence of the existence of such survey, of its boundaries or the *locus in quo*.

The evidence was objected to, first, because *res inter alios acta ;* second, because actually recorded prior to the pretended survey for Royden—and overruled by the court, who considered it as too vague to be admitted as evidence of the survey in question..

CITED *in Stout* v. *Hopping*, 1 *Hal.* 125.

DUBOIS v. LOPER.

In debt on bond, defendant pleads that plaintiff falsely asserting (what he knew to be false) that the defendant was legally liable to pay him a certain sum of money, and thereby induced him to execute the bond in question—this plea is bad on demurrer.

Dubois v. Loper.

This was an action of debt brought on a bond executed by Loper to Dubois for £90, conditioned for the payment of £45. The defendant prayed oyer of the bond and condition, which, being set forth, he pleaded, first, *non est factum ;* second, [383] that before and at the time of executing the said bond to Dubois, he, the defendant, was seized and possessed of one acre and three-quarters of an acre of land or cedar swamp in Pittsgrove, and did sell to one Birch the trees growing thereon. That on the 30th of August, 1792, Dubois falsely and deceitfully declared and affirmed to the defendant that Birch had cut and carried away fifteen trees standing on his, the plaintiff's, land, and that Loper was liable to pay Dubois £3 for each tree, under the act of assembly, he, the said Dubois, well knowing, at the time, the affirmation was false, and that the trees were, in fact, cut on the land belonging to Loper; and this writing obligatory was given for this cause, and for none other, and so was had and obtained by fraud. The third plea was *per fraudem* generally.

The plaintiff took issue on the first and third pleas, and demurred to the second.

The demurrer was argued by *L. H. Stockton* and *Pearce,* for the plaintiff, and by *Leake,* for the defendant.

For the plaintiff—

1st. The plea, if considered as merely stating a want of consideration, cannot be supported, an allegation of want of consideration being no defence to an action of this kind. 1 *Powell on Cont.* 333 ; 2 *Bl. Com.* 446 ; 3 *Burr.* 1669 ; *Pillans* v. *Mierop,* 1 *Esp.* 316 ; *Cowp.* 47 ; *Jenk. Cent.* 108, 9, *pl.* 9 ; *Ib.* 166 ; *Morris* v. *Lutterel, Cro. El.* 672 ; *Finney* v. *Finney,* 1 *Wils.* 34 ; 1 *Bac. Abr.* 112, "*Agreements,*" B 2.

2d. If the plea was intended to exonerate the defendant on the ground of fraud, the facts stated do not amount to that species or degree of fraud which would authorize the interposition of the court to avoid the deed. It states that Dubois falsely, and knowing it false, affirmed Birch had cut his

trees, and Loper, to make him amends, gave his bond for the penalty.

But the mere assertion of an untruth, without other artifice, particularly in a case where the party deceived had it in his power to obtain correct information, will not avoid a contract solemnly entered into. There must be some artful device, sufficient to ensnare a man of ordinary prudence, to con-[384]-stitute fraud. 3 *Bac. Abr.* 294, " *Fraud,*" *A ; Thoroughgood's case,* 2 *Co. Rep.* 9 ; 1 *Burr.* 397 ; *Salk.* 211 ; *Cro. Jac.* 196 ; 7 *Bull.* 30, 31.

*Thoroughgood's case* illustrates the distinction which has been taken. The reason why the bond was in that case adjudged void was not because read falsely, but because it was read falsely to one that was unlettered and could not read it himself. If the defendant had himself been able to have read the instrument, his plea that it was falsely read would have been rejected.

It is more fully adopted by the court in the case of *Bayley* v. *Merril, Cro. Jac.* 386, where it was held by the court, on a motion in arrest of judgment, that on an agreement to carry goods at so much per hundred weight, an action will not lie for falsely affirming the goods weighed less than they actually did, because the plaintiff might have inquired into the truth of the assertion. In the language of the court in that case, " it was his gross negligence that he would undertake a weight so far exceeding the affirmation without causing it to be weighed."

*Leake, contra.* The demurrer admits the allegations contained in the plea, viz., that the plaintiff did falsely and knowingly affirm, &c., by which means he prevailed upon the defendant to enter into the bond. This comes up entirely to the idea which my mind entertains of fraud. A *suggestio falsi*, as well as a *suppressio veri*, will, and ever ought to, vitiate contracts. The plaintiff procured this instrument by a plain and willful lie, and this fact is admitted by the demurrer.

PER CUR. The plea is clearly bad. There must be judgment for the plaintiff on this demurrer

[385]   CORYELL v. CORYELL.

If a request is made to arbitrators for an adjournment on reasonable grounds and at a proper time, and it is refused, it is a sufficient reason for setting aside an award. But such an application is too late when the parties had agreed that the referees should proceed to make their decision, and they had in consequence agreed upon their award.

This was a motion to set aside the report of referees, on the ground that they had refused an application by the defendant for an adjournment.

Mr. Thompson, one of the referees, swore that on the morning of the day on which the report was signed, the defendant made a written application for an adjournment, that he might have time to procure from Philadelphia a receipt which he alleged to be material in his defence. Thompson also swore he thought the request reasonable, and he refused to sign the award because it was not granted. The writing containing the application was produced, in which the defendant stated he had through mistake left some material papers at home, and was at the time unable to produce the receipt and other material evidences. Thompson also said in his affidavit that the defendant stated the want of other material evidences, left at home by mistake.

The two other referees, on the other hand, swore there had been three meetings by at least two of the arbitrators, previous to this of the 1st of September. On the 24th of July, in particular, the parties were so fully heard before them, that both sides agreed the referees at the next meeting, which was fixed for the 29th of August, should finally settle the business, and the defendant told them that if he was not present, they might proceed without him.